UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIFFANY L.,[1]

                               Plaintiff,

           v.

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
_____

DECISION & ORDER

21-CV-1143MWP

**PRELIMINARY STATEMENT**

Plaintiff Tiffany L. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits and Supplemental Security Income ("DIB/SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 14).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 12). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

# DISCUSSION

## I.  Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

   (4)  if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

   (5)  if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.  **Procedural History**

   Plaintiff protectively filed for DIB/SSI on August 18, 2016, alleging disability beginning on November 30, 2014. (Tr. 1188, 1191).[2] Those applications were denied by an ALJ on February 15, 2019 (the "2019 Decision"). (Tr. 15-31). On appeal, the Hon. Charles J. Siragusa, United States District Judge for the Western District of New York, issued a Decision and Order (the "District Court Decision") remanding the matter on the grounds that the 2019 Decision was not supported by substantial evidence, and a judgment remanding the action was issued on September 30, 2020. (Tr. 1276-90). In the District Court Decision, Judge Siragusa determined that the "record was bereft of any up-to-date medical opinion regarding [p]laintiff's mental functioning . . . despite evidence of the 2017 diagnosis of agoraphobia and PTSD." (*Id.*). Accordingly, Judge Siragusa determined that remand was warranted in order to develop the

---

[2] The administrative transcript (Docket ## 6, 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

record with a non-stale medical opinion regarding plaintiff's mental functioning.  (*Id.*).  In reaching this conclusion, Judge Siragusa emphasized "the limited nature" of the remand and noted that "plaintiff has failed to demonstrate that the ALJ's findings with respect to her physical impairments are not based on substantial evidence."  (*Id.*).

On October 23, 2020, the Appeals Council entered an order remanding the case to the ALJ and directing the ALJ to conduct further proceedings consistent with the District Court Decision.  (Tr. 1293).  On July 15, 2021, the ALJ concluded that plaintiff was not disabled (the "2021 Decision").  (Tr. 1188-206).  Plaintiff commenced this lawsuit on October 21, 2021.  (Docket # 1).

### III.  <u>The ALJ's Decision</u>

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims.  Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 30, 2014, the alleged onset date.  (Tr. 1188-206).  In reaching this conclusion, the ALJ noted that plaintiff engaged in work after the alleged onset date, but that the work did not rise to the level of substantial gainful activity.  (*Id.*).  At step two, the ALJ concluded that plaintiff had the following severe impairments: scoliosis, disc herniations at L4-L5; asthma; hidradenitis suppurativa; obesity; depressive disorder, generalized anxiety disorder; post-traumatic stress disorder ("PTSD"), agoraphobia with panic disorder; learning disorder; and, attention deficit hyperactivity disorder ("ADHD").  (*Id.*).  At step three, the ALJ found that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings.  (*Id.*).

With respect to plaintiff's mental impairments, the ALJ considered the four broad categories of mental functioning. (*Id.*). Specifically, the ALJ determined that plaintiff had moderate limitations in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and, adapt or manage herself. (*Id.*). The ALJ concluded that plaintiff retained the RFC to perform less than the full range of sedentary work. (*Id.*). Specifically, plaintiff was able to lift and/or carry ten pounds occasionally and less than ten pounds frequently and could stand and/or walk for up to two hours and sit for up to six hours of an eight-hour workday. (*Id.*). Plaintiff was able to occasionally stoop, kneel, crouch, crawl, and climb stairs, but was unable to climb ladders, ropes, or scaffolds. (*Id.*). Additionally, plaintiff could not be exposed to temperature extremes, outdoor work, or pulmonary irritants. (*Id.*). The ALJ further concluded that plaintiff was limited to simple, non-production rate, routine work, involving simple workplace decisions, minimal changes in workplace processes and settings, and only occasional interaction with supervisors, coworkers, and the public. (*Id.*). At steps four and five, the ALJ found that plaintiff had no past relevant work, but that other jobs existed in significant numbers in the national economy that, based on her age, education, work experience, and RFC, plaintiff could perform, such as table worker and zipper trimmer. (*Id.*). Accordingly, the ALJ found that plaintiff was not disabled. (*Id.*).

### IV.     Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9, 13). First, plaintiff maintains that the physical portion of the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to account for overhead reaching and sitting

6

limitations purportedly assessed by Elizabeth Stom, M.S., P.T., despite giving her opinion "significant weight." (Docket ## 9-1 at 20-31; 13). Second, plaintiff argues that the ALJ improperly discounted her subjective complaints by emphasizing her noncompliance with treatment recommendations without considering potential explanations for her noncompliance. (Docket # 9-1 at 31-35).

V.  **Analysis**

    A.  **The ALJ Properly Accounted for Limitations Assessed by Stom**

Plaintiff contends that the ALJ improperly failed to account for the sitting and overhead reaching limitations assessed by Stom in formulating the RFC even though she found that Stom's opinion was entitled to "significant weight." (Docket ## 9-1 at 20-31; 13). I disagree.

The record demonstrates that Stom conducted a functional capacity evaluation of plaintiff on March 7, 2017, at the request of plaintiff's primary care physician Rajinder Bajwa, MD. (Tr. 465-68). In her report, Stom explained that the purpose of the evaluation was to "objectively quantify [plaintiff's] current maximum voluntary physical capacity," including evaluating her "consistency of effort." (Tr. 465). According to the report, plaintiff's answers to the Oswestry Disability Questionnaire indicated that plaintiff perceived herself to be in the "crippled" range of disability. (*Id.*).

Plaintiff was asked to complete a six minute walk test, which she self-terminated after approximately four minutes due to complaints of increased back pain. (Tr. 466). Stom observed that plaintiff ambulated without an assistive device and without an antalgic gait. (*Id.*). Through various work simulation tasks, plaintiff demonstrated, among other things, that she was

7

able to engage in occasional pushing, pulling, sitting, standing, reaching overhead, stooping, climbing stairs, and walking. (*Id.*). With respect to the reliability of plaintiff's reports of pain and disability, Stom concluded that the test findings, "in combination with clinical observations," suggested "the presence of inconsistency to the reliability and accuracy of [plaintiff's] reports of pain and disability." (Tr. 468). Stom reported that motivated patients under evaluation generally do not self-terminate more than twenty percent of the lifting tasks, yet plaintiff "self-limited ALL job simulation tasks." (*Id.*). Based upon the results of the evaluation, Stom opined that plaintiff was capable of performing "the full capacity for sedentary work at this time." (*Id.*).

The ALJ accorded Stom's opinion "significant weight," observing that Stom concluded that plaintiff was capable of sedentary exertion.[3] (Tr. 1202). The ALJ found Stom's conclusion that plaintiff could engage in sedentary work consistent with the results of the functional capacity testing administered by Stom, as well as with plaintiff's medical treatment records, which generally demonstrated "grossly normal findings." (*Id.*).

Plaintiff argues that the ALJ erred by failing to account in the RFC for the "occasional" sitting and reaching overhead limitations assessed by Stom. (Docket ## 9-1 at 20-31; 13). I agree with the Commissioner that plaintiff's argument misconstrues Stom's opinion. (*See* Docket # 12-1 at 9 ("[t]his argument evinces a misunderstanding of the evidence from [Stom], as she did not opine that [p]laintiff could reach overhead occasionally")). Simply stated, Stom never opined that plaintiff was only able to engage in occasional sitting or overheard reaching. To the contrary, review of her evaluation demonstrates that plaintiff was

---

[3] As noted above, Judge Siragusa's remand was for the limited purpose of obtaining an updated mental evaluation of plaintiff. (Tr. 1288). Judge Siragusa already determined that plaintiff "has failed to demonstrate that the ALJ's findings with respect to her physical impairments are not based on substantial evidence." (*Id.*). In both the 2019 and 2021 Decisions, the ALJ determined that plaintiff was capable of less than the full range of sedentary work. (*Compare* Tr. 22 *with* Tr. 1195-96). Significantly, in her 2019 Decision, the ALJ accorded great weight to Stom's opinion that plaintiff could engage in sedentary work. (Tr. 27).

asked to perform various work-related functions, while Stom observed her consistency of effort in order to evaluate the validity of plaintiff's complaints of pain and self-limiting behavior. (Tr. 465-68). Notably, despite self-limiting in each of the job simulation tasks, plaintiff was able to perform occasional overhead reaching and sitting. (*Id.*). Stom concluded, based upon plaintiff's testing results and Stom's own clinical observations, that plaintiff's reports of pain and disability were unreliable and inaccurate and that plaintiff was capable of performing the "full capacity for sedentary work." (*Id.*).

Moreover, the decision makes clear that the ALJ accorded significant weight to Stom's opinion to the extent that it found that plaintiff was capable of performing the exertional requirements of sedentary work. (Tr. 1202). The ALJ specifically described the opinion as "conclud[ing] the [plaintiff] could perform sedentary exertion," which the ALJ found to be consistent with the other medical evidence in the record, including updated treatment records in which plaintiff reported that for the previous ten months she had been engaged in an exercise routine involving daily running, walking, pushups, and crunches. (*Id.* (citing Tr. 2248); *see also id.* (describing Stom's opinion as "restricting the claimant to sedentary exertion")). Further, the ALJ accorded significant weight to the opinion of consultative examiner John Schwab, D.O., who assessed that plaintiff had mild limitations in her ability to bend, lift and carry objects – thus providing further support for her physical RFC assessment. (*Id.*).

Because I find that plaintiff's argument stems from a misinterpretation of Stom's opinion, I reject plaintiff's contention that the ALJ erred by failing to reconcile an apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). (Docket # 9-1 at 25-31). During the administrative hearing, in response to the ALJ's hypothetical regarding an individual with plaintiff's RFC, the vocational expert testified that

such an individual could perform the positions of table worker and zipper trimmer. (Tr. 1239-42). Plaintiff maintains that this testimony is inconsistent with the DOT because, according to the DOT, the positions of table worker and zipper trimmer require frequent reaching. (Docket # 9-1 at 26-27).

Although there is little question that a vocational expert's "testimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching' ... creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony," *see Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92-94 (2d Cir. 2019), in this case the ALJ never concluded that plaintiff had any limitations in her ability to reach, and therefore the hypotheticals posed by the ALJ to the vocational expert did not contain any reaching limitations. Accordingly, there was no conflicting testimony to be resolved.

### B. Evaluation of Plaintiff's Subjective Complaints

I turn next to plaintiff's contention that the ALJ improperly discounted her subjective complaints by emphasizing her noncompliance with treatment without considering potential explanations for her noncompliance.[4] (Docket # 9-1 at 31-35). For the reasons explained below, I find that plaintiff's challenge lacks merit.

An evaluation of subjective complaints should reflect a two-step analysis. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether the evidence reflects that the claimant has a medically determinable impairment or impairments that could produce the relevant symptom. *See id.* Next, the ALJ must evaluate "the intensity, persistence, or

---

[4] Again, the remand was for the limited purpose of obtaining an updated mental evaluation of plaintiff. (Tr. 1288). In both the 2019 and 2021 Decisions, the ALJ discounted plaintiff's subjective complaints based upon the same evidence of noncompliance. (*Compare* Tr. 24 *with* Tr. 1198).

functionally limiting effects of [the] symptom[s]." *Id.* The relevant factors for the ALJ to weigh include:

> (1) [the claimant's] daily activities; (2) [t]he location, duration, frequency and intensity of [the claimant's] pain or other symptoms; (3) [p]recipitating and aggravating factors; (4) [t]he type, dosage, effectiveness, and side effects of any medication the claimant take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (5) [t]reatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (6) [a]ny measures [the claimant] us[es] or ha[s] used to relieve [his or her] pain or other symptoms . . . ; and (7) [o]ther factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii)).

Although an ALJ may properly consider a claimant's noncompliance with recommended treatment in evaluating her subjective symptoms, the ALJ may not discount a claimant's subjective symptoms based upon noncompliance with treatment recommendations without first considering potential explanations for the noncompliance. *See* SSR 16-3p, 2017 WL 5180304, *9 (2017) ("[w]e will not find an individual's symptoms inconsistent with the evidence in the record on th[e] basis [of noncompliance] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints"); *see also Greene v. Berryhill*, 2018 WL 8646666, *8 (D. Conn. 2018) ("[b]efore drawing an inference, the ALJ must consider possible reasons he or she may not comply with treatment") (internal quotations omitted).

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 1197). Review of the decision

11

demonstrates that the ALJ assessed plaintiff's subjective complaints in the context of a comprehensive review of the entire record.

As an initial matter, I disagree with plaintiff that the ALJ failed to consider any potential explanations for plaintiff's failure to comply with treatment recommendations. To the contrary, the ALJ specifically considered whether plaintiff's failure to comply with treatment recommendations owed to her inability to afford them. (Tr. 1198). In the decision, the ALJ summarized evidence indicating that plaintiff was noncompliant with treatment recommendations, including multiple missed appointments and failure to the obtain imaging or EKGs ordered by her providers. (*Id.*). Although the ALJ suggested that plaintiff was noncompliant because she discontinued her mental health medications during her pregnancy, the ALJ also noted that in 2019 plaintiff stopped all mental health medications despite not being pregnant at the time. (Tr. 1201). Indeed, during a mental health appointment in March 2021, plaintiff reported that she did not want to take any mental health medications, indicating that she was "confident she [would] be able to manage her symptoms without medication." (Tr. 2219).

In any event, the ALJ identified several factors in addition to plaintiff's noncompliance as grounds for discounting plaintiff's subjective complaints. (Tr. 1198-99). According to the ALJ, plaintiff's complaints were inconsistent with her daily activities, which included her independent ability to care for her personal hygiene, prepare simple meals, engage in household chores, visit with friends and family, shop, use a computer or smart phone, handle finances, watch television, care for her pets and children, and operate a motor vehicle. (Tr. 1198). The ALJ further found that various daily activities reflected in plaintiff's medical records were inconsistent with her allegation that she was unable to leave her home, including working in a store thirty hours per week, shopping, driving, exercising at the gym, and attending

her daughter's school functions. (Tr. 1198, 1200). Other medical records demonstrated daily activities inconsistent with plaintiff's alleged physical limitations, including daily exercise involving running, walking, and doing pushups and crunches. (Tr. 1202). The ALJ also noted that the record demonstrated that plaintiff engaged in work activity during the relevant period, indicating that plaintiff was not as limited as she alleged. (Tr. 1198). Further, the ALJ considered the objective evidence in the record, including treatment records, demonstrating generally minimal objective findings that were largely inconsistent with the degree of limitations alleged by plaintiff. (Tr. 1198-202).

I conclude that the ALJ properly considered plaintiff's noncompliance with treatment recommendations as one factor in evaluating her subjective complaints. *See Weed Covey v. Colvin*, 96 F. Supp. 3d 14, 33 (W.D.N.Y. 2015) ("the ALJ was permitted to consider [p]laintiff's noncompliance with treatment as a factor weighing against [p]laintiff's credibility[;] . . . [t]he fact that the ALJ did not explicitly reference [p]laintiff's alleged mental impairments as a cause for noncompliance does not mean that it was not considered"); *Lee v. Colvin*, 2015 WL 3505791, *6 (W.D.N.Y. 2015) ("[t]he ALJ was permitted to consider plaintiff's noncompliance with treatment as a factor weighing against his credibility"); *Mashaw v. Colvin*, 2014 WL 3956643, *11 (N.D.N.Y. 2014) ("the ALJ did not reference plaintiff's failure to re-establish contact with his physicians to negate other compelling evidence or as the sole reason for discrediting his testimony, but properly mentioned it as one of the factors used in analyzing plaintiff's credibility"); *Thomas v. Colvin*, 2014 WL 1219213, *5 (W.D.N.Y. 2014) ("[i]n addition to detailing [claimant's] noncompliance, the ALJ addressed other inconsistencies between [claimant's] hearing testimony and record evidence regarding her daily activity, the intensity, persistence, and frequency of her symptoms, and treatment measures[;] [i]n sum, the

ALJ properly based his credibility assessment on the entire case record, and the assessment is supported by substantial evidence"). Accordingly, I conclude that the ALJ's determination is supported by substantial evidence and that remand is not warranted on this ground.

## CONCLUSION

Upon review of the record, this Court finds that the Commissioner's denial of DIB/SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                              *s/Marian W. Payson*
                                                           MARIAN W. PAYSON
                                                     United States Magistrate Judge

Dated: Rochester, New York
           March 18, 2024